**WAGNER et al. v. LUCAS, Commissioner of Internal Revenue.**

**No. 4869.**

Court of Appeals of District of Columbia.

Argued Nov. 13, 1929.

Decided Feb. 4, 1930.

J. Harry Covington, Edward B. Burling, Newell W. Ellison, and Wm. Merrick Parker, all of Washington, D. C., for appellants.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, Sewall Key, John Vaughan Groner, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from the United States Board of Tax Appeals, in which the appellants, as executor and executrix of the estate of Harry M. Wagner, are seeking a redetermination of the taxes assessed against their testator for the years 1919, 1920, and 1921.

It appears that Harry M. Wagner was a resident of Baltimore, Md., and, during the years in question, owned and operated in his individual capacity a wholesale grocery business in the city of Baltimore under the trade-name of H. M. Wagner & Co. He also owned 396 out of 400 shares of the capital stock of H. M. Wagner & Co., Inc., of Washington, D. C.

During the years in question, one William F. Remmert was manager of the Baltimore company; and one Charles W. Bohannon, since deceased, was manager of the Washington corporation. Robert B. Wagner, son of the decedent, assisted in the management of the business of the Baltimore company. During the year 1920 all purchases of sugar for both companies were made through the Baltimore house, and orders were given in the name of that company, and, when shipments were made, they were sent from the refineries to Baltimore and Washington according to the needs of the respective companies.

In the early part of 1920, the decedent was confined by sickness for some time in a hospital and later at his home. During this time Remmert and the son were in active charge of his business. At this time sugar was very high in price and scarce. Remmert and the son purchased as much sugar as they could in order to care for the business both in Baltimore and Washington. These purchases were made for future delivery. When

Wagner was informed of what had been done, he stated that it was his opinion that the sugar market was at its height, and that his business would be ruined if something was not done to overcome the effect of these purchases. He accordingly instructed Remmert and the son to secure options on sugar in the New York Coffee and Sugar Exchange to cover losses which he felt certain would occur when they were compelled to sell the sugar purchased on a declining market. These instructions were promptly carried out; and, as a result of the short sales of sugar, a total profit of $102,543.58 was realized during the year 1920. During the period of the decline in the price of sugar, 24 carloads were received by the Baltimore company, and 12 carloads were received by the Washington corporation. These shipments were made in fulfillment of the orders for future delivery which had been placed by Remmert and the son. Of the profit of $102,543.58 made on the short sales, decedent allocated $30,000 to the Washington corporation and the balance to his individual business in Baltimore.

It further appears that during the years in question the decedent used an automobile, which he owned, in going to and from his home to his place of business, a distance of seven miles; and in making trips during business hours from his office to the business part of Baltimore, which is about three miles, as well as to other points in and around Baltimore; and, when occasion required, the automobile was used in business trips to Washington and New York. The total expenditures for the maintenance and operation of the automobile, including the salary of the chauffeur at $1,004 per annum, were, for 1919, $2,285.98; for 1920, $3,355.66; for 1921, $1,967.17.

The Commissioner disallowed any deductions for expense incurred in maintaining and operating the automobile. He also determined that as to the year 1920 the amount of $37,543.58, representing the portion of the profit from short sales of sugar allocated to the Washington corporation, should be included in decedent's income for that year. The Board affirmed the Commissioner; and from the decision this appeal is prosecuted.

■ It is true that the court, in tax cases as well as in other matters, where a corporation is a one-man corporation, may look through the corporate entity, and, where necessary to accomplish the ends of justice or prevent fraud, attach responsibility to the individual. We think, however, that there is no occasion for the application of this rule in the present case. There is no evidence of fraud. On the contrary, it appears that decedent allocated profits in proportion to the amount of sugar purchased and delivered to the respective companies. The mere fact that he owned substantially all of the stock in the Washington corporation would not deprive it of functioning as a corporate entity. It possessed all the powers and liabilities of a private corporation, and must be treated as such. It was therefore proper to allocate to it the profits in proportion to the amount of sugar which it received and disposed of in its business.

■ The expense attached to the operation of the automobile in connection with decedent's business was an expense properly deductible in making out his return for taxation. If it appears that the automobile was not exclusively used in connection with the business, the proportionate time should be ascertained that it was so used and a proportionate amount of the total expense should be deducted.

■ The evidence as to the proportionate amount of the use of the automobile that was devoted to the business was given by the son, who testified: "My father used his automobile at least 50% in connection with his business. * * * I should say that 90% of the time he left the office during the day he would use his automobile for business." It is urged by counsel for the government that this is merely opinion evidence, and was properly disregarded by the board. It is not opinion evidence at all. It is testimony of a fact based upon the observation and judgment of a competent witness to testify in relation thereto. In the absence of any contradictory evidence, we think that this was sufficient to establish the claim of the decedent that 50 per cent. of the expense of operating and maintaining the automobile was incurred in connection with the transaction of his business.

The decision of the Board is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.